Good morning. May it please the Court, I'm Sharon Arkin for Plaintiff and Appellant Nicholas Rector. Seems to be the day for bleeding issues. There's no dispute that the first complaint misalleged a date of diagnosis. There's no intent to... You did it twice. Yes. And it was a very specific date. Yes. Where did it come from? The template complaint. So it was borrowed from some other complaint? Yes. And you did it twice. Yes. Why'd you do it twice? It was a mistake. There's no motive. Huge mistake. There's no motive for the plaintiff to misallege. Huge mistake that's gone unexplained. Really? You dropped a footnote and said, well, it was wrong. That's not a very good explanation when you've already been called on the carpet once and alerted to the problem, and you repeat the error. Again, very specific date. It was that specific date. That error was not brought to our attention. It was never asserted. You were told that there was a statute of limitations problem. That should not have been too difficult to figure out. Correct. Well, no, that is also untrue. In these pain pump cases, all of them basically alleged discovery rule statute of limitations bars or preclusion of the statute of limitations based on the discovery rule. And the dynamic was, with these pain pump cases, that Judge Real repeatedly sustained or granted 12b6 motions with leave to amend. And with this firm in particular, Weitz and Luxenberg, they amended to add more specific allegations regarding the discovery rule I do want to just double check something. So you're telling us then that June 15th, 2010 has nothing to do with Mr. Rector. There's nothing that occurred on that date of any significance in this case. Correct. He didn't have an appointment with a doctor. He didn't go complaining. Correct. Even though he and how about the August 30th, 2012? I'm not sure where that came from. So we're not sure about that date either? No, but that's within the statute of limitations. The August 30th, 2012? Yes. The complaint was filed in November of 2012. I'm sorry. You got it. Okay. Got it. All right. So that had nothing to do with any, wherever that came from, it didn't matter. It's irrelevant. Got it. Okay. But the 2010 date and in the post trial or the post judgment motions, we documented the fact and actually attached the template complaint that was used. I mean, these complaints are so different. I mean, this is a case where clearly you went back and did a lot of work, put a lot more in here, added a lot of facts. You've moved numbers around. You've rearranged some things. You've added a lot of detail in here. And you got the date absolutely, utterly wrong, according to your subsequent filing. Okay. And those additional allegations were the standard allegations that had been added in other pain pump cases against Stryker after Judge Reel had granted the 12B6 motion with the leave to amend. Those additional, extensive additional allegations had been added to those other three cases. And once added, Stryker did not move to dismiss again. So those additional allegations were apparently deemed by Stryker, at least, to be sufficient to establish a discovery rule defense to the statute of limitations defense. Let me ask you something, Counsel. With respect to the June 15th, 2010 date in both the original and amended complaint, does that allegation state that the defendant, that the plaintiff learned from his doctor that the pump was the cause of his injury? No, it does not. And that was. Oh, it states that he has complaints in his shoulder. And degeneration in the. Degeneration. Correct. Does it state anything about him learning from any informed source what the cause of those complaints is? Absolutely not in both the original. Why is the typo relevant in any way? Well, I don't think it is. And that was my primary argument in my brief. Maybe the defendants will tell me about that. I'm sure they'll be happy to. But one of my goals here today was to highlight the Fox versus Ethicon case, the California Supreme Court case. That's a staple case, right? Yes, it is. And that specifically says you have to know both that you have an injury and be suspicious of its wrongful cause before the discovery rules comes into play. And you have no duty to investigate until at the time you discover a suspicious wrongful cause, you need to go out and find out, is that true? And where is the allegation that between 2010 and 2012 when he discovered the cause, the plaintiff was diligent in pursuing the investigation of what caused his injury? At the record at 197 paragraph 26 of the first amended complaint, paragraph 25 contains the June 15, 2010 date when diagnosed with advanced degeneration of the glenohumeral joint, a condition consistent with chondrolysis. Twenty-six, plaintiff diligently sought medical attention for his degenerating left shoulder on numerous occasions between 2007 and 2012, but was not advised that it was pain pump that that the pain pump was a potential cause of his cartilage damage until February 15, 2012. All right. But now we know that words like diligently don't mean much, right? That's a conclusion. So he says he sought medical attention and medical medical attention can mean medical treatment. Where is the allegation that he sought to determine the cause of his medical condition? In paragraph 30, starting on that same page, plaintiff could not have made an earlier discovery, despite his reasonable diligence because of the knowing and active concealment and denial of the facts by Stryker, and the following paragraphs for several pages. I guess I'm not making myself clear. Paragraph 26 says plaintiff sought medical attention. OK, fine. That can be doctor. This hurts. Give me some medicine. Right. OK. But where is the allegation that he said that he sought diligently to find out from doctor or from any other source what the cause of his injury was? And you say he couldn't because of deception by the manufacturer. Right. And this goes back to what Fox says and how Fox handled this particular, this almost identical type of situation with a product that caused an injury unknown to the. But when did he learn that it was the pump that was causing his injury? That's what paragraph 26 says, but was not advised that the pain pump was the potential cause of his cartilage damage until February 15th, 2012. And who told him on February 15th, 2012, that the pump was the culprit? The next paragraph plaintiff first made this determination that the cartilage damage at issue was potentially attributed to the use of an infusion pump, pain pump on or about February 15th, 2012, during an office visit with Dr. Spears. And that's the wrong doctor was identified who diagnosed him with significant loss of glenohumeral joint space with high suspicion for chondrolysis. All right. But doesn't that a little bit inconsistent with paragraph 30? You're telling me that he could not have discovered earlier because of the deception of the pump manufacturer. But Dr. Sears told him back in 20 2012, on February 15th, there was the pump. So and he filed within a few months. Sorry. Don't you see this inconsistency between alleging that nobody could find out the pump was a culprit because of the deception of the company? And Dr. Sears finding that out prior to February 15th, 2012, he couldn't have discovered it because of the strikers concealment. But that somehow ended February 15th, 2012. The problem here is Dr. What were the facts that are stated in a complaint following Iqbal, which make it plausible that on February 15th, 2012. The manufacturer stopped deceiving the public and Dr. Striker, Dr. Sears found out the pump was a culprit. And if we were had been granted leave to amend, we could have alleged that. And that's the other point here. Leave to amend should have been granted, even though it wasn't requested. But the Cook case says leave to amend has to be granted if there's any plausible argument, any plausible set of facts which could be amended. And you've identified one. And so did the district court. How was it that Dr. Spears, who is actually Dr. Glau, I think, and Dr. that this could be a pain pump problem. And thus couldn't have told the plaintiff that this was a pain pump problem and put plaintiff on notice that he needed to do something, which he did within just a few months of that date. To fulfill the Twombly-Iqbal specificity requirements. Although I don't believe that Twombly and Iqbal require specific allegations about how a particular doctor learned a particular issue. And all the doctors in this community learned about the pain pump problem gradually over a period of time. It wasn't like one day. Why didn't you allege that? And the complaint, which is, Judge Bobby points out, shows severe reworking. Well, and the allegations that were added to create the First Amendment complaint had been accepted by Stryker in prior cases. The exact same allegations about the whole dynamic had been accepted by Stryker in prior pain pump cases and they had not moved to dismiss after those allegations were added. So, naturally, the belief was, if we add these allegations, that's all we need to do. Now, Stryker's arguing, the district court's arguing, and you're asserting that additional allegations are necessary. Well, so be it. Fine. We'll add them. But we didn't get the chance to do that because the one artifact of an erroneous 2010 date, which, as you've pointed out and I believe correctly, didn't start the discovery rule time anyway under Fox because he wasn't told that there was wrongdoing involved in his shoulder degeneration. At that time, he could have thought it was a doctor's malpractice. Doctor's malpractice, degenerative arthritis common after post-surgical issues. He had no idea. His doctor never told him anything. And he had no other way of learning of the problem. There's not even any allegations that he was aware that a pain pump had been installed after his surgery or what the impact of that or the effect of that. Those allegations can be added. And the crux of the district court's error was in sustaining or granting the 12B6 motion without leave to amend. That was the problem. And this isn't a pretty scenario. I'm not saying things were done well. They weren't. Mistakes were made, but they were simply mistakes. And I'd like to reserve the rest of my time for rebuttal. You may do so, Mr. Archuleta. Thank you very much. Mr. Marston. Please, the court, Hall Marston along with my colleague, Christopher Norton, on behalf of the appellees, Stryker. I'm a little uncertain if the court will bear with me in terms of these statements by appellants' counsel outside the record about the history of the pain pump litigation, what pain pumps are like, and so on, that appear nowhere in this record. I've had the privilege of representing Stryker before the Ninth Circuit, the Eighth Circuit, and the Sixth Circuit, successfully affirming summary judgment on these pain pump cases. And I can tell you, for example, that the suggestion that the plaintiff didn't know he has a pain pump is just outrageous. The plaintiff carries that pain pump with him for 48 hours post-operatively with him while it administers the anesthetic. So the suggestion, completely outside the record, that he doesn't have it is – Well, yeah, I think that's irrelevant. The question is when did he first reasonably get put on notice that the pain pump was a causal element in his injury? Well, if I may break that down into two questions, if you'll forgive me, Your Honor. Sure. I think the first question is where are the allegations in the FAC that show reasonable diligence on the part of the plaintiff after the plaintiff has suffered this debilitating injury, which his index surgery was intended to correct? The answer is there are none. And second – What about Paragraph 26, he diligently sought medical attention from 2010 to February 15, 2012, when he was told by Dr. Sears that it was a pump? Well, the allegation that would show reasonable diligence, that does not show diligence. That shows that he sought medical attention. The diligence is that he said to the doctor, Doctor, my shoulder has gotten much, much worse after this procedure, and why has that happened? And in this respect, Your Honor, first, to go to how could he have found out earlier? Well, of course, the first amended complaint is rife with allegations of other information out there in the public sphere about issues with chondrolysis and pain pumps. From no less a source in 2009 than the Food and Drug Administration. Look at page – record 204, I believe. So we know in 2009 this information is out there. You said information, not inflammation. I said information, Your Honor, nor did I say very unique. But the point here, I think, is, Your Honor, that there are two cases that are discussed in the briefs that I think the panel would benefit from real close scrutiny about what is the trigger of the duty to investigate. The first is the Snow v. A.H. Robbins case. The facts are quickly these. The patient goes in to get an IUD, is told the IUD is going to prevent pregnancy. She becomes pregnant. The device failed. And the court finds that that fact pattern is an injury of sufficient specificity to the device with which she was treated to suggest that there was something wrong, that something wrong had occurred to her under the line of cases articulated in Jolly and Gutierrez and Sanchez, for example, and Fox and Grisham. And that sparked the statute of limitations. Now, one could roll their eyes and say Snow is an old case. What does that mean? But then the court should look to a case that figures very prominently in the briefs. Snow is cited, but with only a sentence reference, and that's the Nelson v. Invidious case. Now, the Nelson-Invidious case involves Redux, which is a diet drug. And the plaintiff complains of fatigue and palpitations. And Invidious suggested, aha, palpitations and fatigue. That should have been enough to alert her that she had a cause of action. And Justice Armstrong was very clear in stating that when you have those kind of common, generic symptoms that do not occur in proximity to the use of the drug, that those are not enough to trigger the statute of limitations. Well, by the same reasoning, symptoms that are severe, disabling, degenerative, as the plaintiff has alleged, in the shoulder, I keep pointing to my left shoulder, when he alleges that it was the left shoulder in the first minute complaint, but it's actually the right shoulder that was suffering this pain, another error in drafting in the complaint. And then does nothing to investigate the procedure-specific related pain. The district court was entirely within its rights to conclude that that did not allege reasonable diligence under Iqbal and Twombly. So if you have this fact pattern, which is the one that's alleged, I go in, I have the surgery in 2007, I immediately start to suffer. Then why shouldn't we reverse and direct the court to enter a sustaining of the, or dismissal of the complaint would lead to amend to all, see if she can allege facts showing that he was reasonably diligent in seeking medical attention, in seeking the cause of the injury? Because there's no good reason to do so, Your Honor. And we know that because we know exactly what they would allege in this amended complaint when they submitted the proposed second amended complaint in support of their motion for reconsideration. And all they did, Your Honor, in respect to that complaint, notwithstanding Stryker's clear argument and the district court's holding that there was no allegation of diligence in the first amended complaint, all they did was change the June 2010 date. They made no correction of the misidentified doctor. They did not correct the misidentified shoulder that was aggravated, allegedly aggravated. They didn't identify who actually told him about the condition with the pump. It's not when you're told for purposes of the statute of limitations. The Fox case, for example, makes that clear? I have a question, sir. Certainly, Your Honor. We're talking about the trigger for the knowledge. Yes, ma'am. What in this fact pattern that is alleged, where we have a shoulder that is degenerating, he has a bad shoulder, he has surgery, and then his shoulder continues to get worse over time, what in that fact pattern should have triggered the knowledge? The relationship between the accelerated deterioration of the shoulder immediately following on the procedure. But it's not immediate. He alleges it's immediate. He's alleging that he's seeking care for this problem from 2007 to 2012. That's alleged in the original complaint, and it's alleged in the first amended complaint, and alleged in the proposed second amended complaint. So the district court, as it's looking at this allegation, has to take that for what it's worth. And that is that I was seeking treatment for my bad shoulder from the result of this procedure from 2007, when the surgery occurred, to 2012. And it gets worse gradually.  May I, Your Honor? It says that it's grinding, degenerating. Severe cartilage loss and death in his right shoulder following surgery. That's not, Your Honor, at least on the basis of these allegations, that is not, and it's the allegations that under Rule 11 we're here to scrutinize, that is not this kind of gradual plateau like I, at age 63, with the problems in my right shoulder. No. This is, I go in to have my shoulder fixed, they fix my shoulder, and I'm suffering grinding, popping, clicking, limited range of motion, which is alleged in the original complaint, conveniently edited out of the first amended complaint. There's no allegation of reasonable diligence. Fox says, and Fox says this. You mentioned that before. You said there was no allegation of diligence in the complaint, and the trial court pointed that out, the district court pointed that out, and there was no allegation of diligence in the first amended complaint. Point to me where Judge Reel said anything about lack of allegation of diligence in seeking. I didn't see that. Well, if I overstated the case, Your Honor, I apologize. May I look quickly at the order? Sure. As a matter of fact, I don't see anything about diligence at all. He goes off on the unforgivable, unfortunate typographical error, but I don't see him saying anything about. Well, Your Honor, may I stand corrected a little bit? If you take a look at page 156 of the excerpts, and you look at the paragraph that starts at line 9. Okay, which page of the order are you on? This is on page 5 of the order. Line 9. Strictly speaking, Your Honor, I will concede your point that Judge Reel doesn't say anything about diligence in the MTD order. He does talk about the failure to comply with the Jolly requirement, which is also the Fox requirement. It's the Grisham requirement to allege that I couldn't have discovered this earlier. And Judge Foote pointing to that point, there's nothing here that says he couldn't have discovered earlier. In fact, he alleges that there was publicly available information from the regulatory agency to that effect. We're getting back to the question I asked. He finds that he didn't, and you're quite right, he didn't state specific facts demonstrating that he could not have discovered his injury. My question was, well, if he granted leave to amend, perhaps he could state those specific facts. And your answer was, that's a waste of time. There's no good reason to do that, I'm quoting you. And the reason is because there was no allegation of diligence in the first complaint, nor was there in the first amendment complaint. That was pointed out to the plaintiff, and he didn't change his pleading in first amendment complaint to state specific facts. But I don't see that that is quite accurate. It's not quite accurate because the evidence is undisputed that Mr. Norton specifically told plaintiff's counsel at least twice that each iteration of the complaint was deficient for statute of limitations purposes. Is Mr. Norton obliged to take plaintiff's counsel by the, who's trying to, of course, extract a significant amount of evidence. Tell me who Mr. Norton is. Mr. Norton is the lawyer who's referenced in the record as the lawyer that plaintiff's claim was responsible for all of this problem. And that Judge Reel specifically found had acted in good faith in dealing with the plaintiffs and alerting them to the problem. Defense attorney. Yes, Your Honor. Okay, I got it. So instead of the judge pointing out that there hadn't been any specific facts alleged in the complaint and none in the first amendment complaint, it was Mr. Norton, the defense attorney, who pointed that fact out to the plaintiff. And that is shown in where in the record? Well, for example, it's in the order, Your Honor, where the court, the district court, finds in denying the motion for relief under 60B that Mr. Norton had alerted them to these specific facts and sent them the Adams opinion, which was the seminal district court opinion, on these pain pump actions which the district court was supervising. This would be, for example, it's more convenient to refer to the page number of the order than in the record. That would be at pages 3, 4, and 5 of the district court's order denying the motion under Rule 59E and Rule 60. But there's one other reason, if I may, Your Honor, about why sending this back with leave to amend would be a grave mistake, and that's this. We know what they would allege in the proposed second amended complaint. They had already been told by Stryker's briefing, by Mr. Norton, and by the district court, that this complaint was not sufficient for specific reasons. For example, not alleging facts to show that they couldn't have discovered earlier. I appreciate the correction, Your Honor, on the reading of the order granting the motion to dismiss. But then in the proposed second amended complaint, where plaintiff's counsel certainly should have gotten religion about getting its act together, finding who the right doctors were, finding which was the right shoulder, and so on. All they did was allege exactly the same facts, showing that this information was publicly available in 2009 and only changed the June 2010 date. So this is the rare situation, Your Honor, where you say, well, why couldn't we just send it back to have them allege the facts that they were alerted to allege, didn't allege, and then when sought relief from dismissal, didn't allege them. How many more opportunities does plaintiff's counsel get to allege the facts accurately under Rule 11? Alleging something in a complaint is not like a mulligan in golf. You've got to do it right the first time. That's why we have Rule 11.  If there was tolerance for repeatedly making these kind of mistakes, and so casually editing from one draft of a completely unrelated complaint, and putting it into another without scrutinizing it, the district courts would be horribly burdened if that was counted. Your opponent says that the allegations in this complaint had been accepted by Stryker and other cases as being adequate to state the statute of limitations discovery rule. Do you agree with that? I do not. All right. And there's nothing in the record to suggest that, Your Honor. Right. So this is something outside the record where we're making assertion about X, making assertion about non-X. I think you've answered it adequately as far as I'm concerned.  It was in the record. Thank you, Your Honor. Now, if I'm... Counselor, you're over your time. Well, I am. So are there any other questions? I don't think so. I appreciate the court's attention. Thank you very much. Thank you, Mr. Marston. Ms. Arkin, you have some time remaining? Because I don't have a lot of time remaining, obviously, I'm going to go very quickly. I'd also like to direct the court's attention to page 198 of the excerpts of record, paragraph 31, where the allegation of the First Amendment complaint is that Plaintiff exercised reasonable diligence in an attempt to discover the cause of his shoulder injury. Plaintiff relied on his physicians to advise of any known complications. Plaintiff had no reason to believe his complaints and or injuries were the result of any wrongdoing, whether intentional or negligent, until the discovery date suggested above. Is there any allegation that he asked his doctors to tell him what caused his condition at any time before February 15, 2012? Plaintiff relied on his physician. He attempted to discover the cause of his shoulder injury and relied on his doctors to tell him. I mean, if you want to change that to Plaintiff requested or asked his doctors what was the cause of his shoulder injury, we can do that. And the fact that we submitted a proposed Second Amended complaint in conjunction with the post-judgment motions and that counsel is still not happy with it shouldn't preclude us from trying to submit a complaint that counsel would be happy with and that the district court would be happy with. That complaint was not accepted for filing. It's a nullity. The declarations by Michael Peterson also in support of and in reply to the post-trial motions specifically delineated how in three other Whites and Lutzenberg pain pump cases they added the group of allegations that were added to the First Amended complaint and that no further motions to dismiss were brought as to those three complaints. So that is in the record. It's there. In Mr. Peterson's declarations, one of them begins at page 29. I'm not sure where the other one begins, but those declarations, oh, no. The first declaration starts at 102 and the second declaration starts at page 29. It's specifically laid out in there that that's why those additional allegations were put into the First Amended complaint. In responding to Stryker's objections to the original complaint, counsel did what they had done in other cases, inserted these additional allegations and just didn't pay attention to the June 2010 date, just didn't recognize that that was an issue. And Mr. Norton in his communications and in his declaration, he never says that was an issue. He never raised specifically the June 2010 date as a problem in this case. He only said it's a statute of limitations issue. You need to fix the statute of limitations. Well, they thought they had based on what they'd done in other pain pump cases. And once the motion to strike or the motion to dismiss was filed, the amendment, of course, had already been made, so no new amendment as a matter of course could be filed. So they were stuck with what they had and attempted to explain it, not to judge real satisfaction, but did attempt to deal with the issue. And again, if nothing else... Counsel, you're well over your time. You may want to sum up. If nothing else, leave to amend should have been granted. Thank you. Thank you, Ms. Arkin. We thank both counsel for the argument. Rector versus Stryker Corporation is submitted.
judges: Foote, Bybee, Bea